Akttndell,
dissenting: I do not agree with the Board’s decision on the first point holding that the earnings of the petitioner’s light and power department are deductible as ordinary and necessary expenses. The majority opinion is based primarily upon the words of the franchise giving the city of Tulsa the right of cancellation if the light and po.wer earnings are not paid over to the Sand Springs Home, and does not give sufficient consideration to the surrounding facts and circumstances. My view is that a deeper scrutiny is required to determine the substance of the entire matter.- It is inconceivable that in the ordinary course of business a corporation would be required to build a power plant, establish transmission lines and otherwise make the large outlay necessary to care for the light and power needs of a city without a cent of return on its investment. Corporations operated for profit do not do business that way, nor are cities accustomed to exact such terms. When we take into view the surrounding circumstances, all of which are established as facts and not merely by inference, we find the real purpose of this unusual transaction. Charles Page was the owner of all the stock, except qualifying shares, of the Sand Springs Railway Co.- He was also the founder and one of the incorporators of the Sand Springs Home, which we held in 6 B. T. A. 198, to be a charitable organization. It was Page’s intent and desire to endow the home with such funds as would enable it to continue in perpetuity. As a step towards that end he conceived the idea that was embodied in the resolutions of the Railway Co. and finally into the franchise procured from the city of Tulsa. The provisions allowing the Railway Co. to engage in the light and power business on condition of payment of earnings to the Home were not inserted at the instance of the city. The franchise was not prepared upon the initiative of city officials and offered to the company on a “ take it or leave it ” basis. On the contrary, it was drafted at the request of the Railway Co. The preamble to the franchise shows beyond a doubt that this was the situation. So viewed, any amount paid by the Railway Co. to the Home would be merely a part of Page’s objective of endowing the latter and would be a charitable contribution which, under the taxing statute, is not an allowable deduction to a corporation. While it is true the policy of the law is to favor charities, that favor has never been extended so far as is here claimed. Even in the case of individuals, deductions for gifts to charitable and other tax-exempt organizations are limited to 15 per cent of the net income. Deductions have been allowed to corporations in some cases for sums contributed to charity, not because of the charitable aspect of the contributions, but because their proximate connection with the business of the taxpayer was sufficient to stamp them with the character of ordinary and necessary business expenses. And so, while not doubting *1315 that the endowment of the Home was a worthy enterprise, I feel that the well established construction of taxing statutes which limits deductions to those specifically enumerated, and the numerous decisions denying charitable deductions, as such, to corporations, forbids our allowance of the deductions claimed here.
The theory prompting the majority opinion, that the payment of the profits from the lighting department was necessary to the continued enjoyment of the franchise, is refuted by the fact that the profits were not paid over to the Home, but were reinvested in the properties of the lighting department. While such reinvestment may have inured ultimately to the benefit of the Home, the fact is that in failing to pay over the profits the taxpayer did not comply with the literal terms of the franchise, which required - that the profits be paid to the treasurer of the Home on the “ 15th day of each and every month.”
The majority opinion does not find it necessary to decide the alternative contention that if the entire net profits may not be deducted as an ordinary and necessary business expense, they should be treated as a trust fund for a charitable organization. It seems to me that there is no merit in this contention. The money received by the Railway Co. was in payment for electricity purchased by consumers and was not paid in in trust, as were the perpetual care funds in Los Angeles Cemetery Association, 2 B. T. A. 495; Inglewood Park Cemetery Association, 6 B .T. A. 386; and Portland Cremation Association v. Commissioner, 31 Fed. (2d) 843, cited by petitioner. This amount when received constituted gross income of the corporation. From this amount was paid the expenses incident to the operation of the business. The remainder, the gross income less the statutory deductions, is the net income that the revenue acts tax. If there is any trust, it is only of the amount left after the payment of the taxes.
This case is not unlike that of Cleveland Railway Co., 10 B. T. A. 310, where the taxpayer was required by municipal ordinance to place in a revolving fund its earnings in excess of a fixed amount and, when that fund reached a specified figure, car fares were to be automatically reduced. The taxpayer contended that the excess earnings were either expenses or trust funds for the benefit of car riders. These contentions were rejected both by the Board and the Circuit Court of Appeals. See 36 Fed. (2d) 347. The reasoning of the Board and the court in that case is applicable here.
It is also worthy of note that when the sale to other interests was made the provision of the franchise here involved was rescinded. This, together with the fact of nonpayment during the taxable years, demonstrates clearly that payment of the light and power earnings *1316 to the Home was not a necessary condition to the operation of the lighting and power department.
Trussell agrees with this dissent.